## Len Ran Inc. v. Mellott
*[Cite as 2 AOA 649]*

*Case No. 89-P-2078*
*Portage County, (11th)*
*Decided April 6, 1990*

*Joseph C. Derosa, Esq., 1500 Standard Building, Cleveland, Ohio 44113, For Defendants-Appellants.*

*L. James Martin, Esq., 4301 Darrow Road, Suite 4400, Stow, Ohio 44224, For Plaintiff-Appellee.*

MAHONEY, J.

Appellants, Alan and Louise Mellott, purchased a wooded parcel of land on the south side of Karry Drive in Rootstown, Ohio. Karry Drive is a private drive which runs off of Route 44 in an east-west direction. It is owned by the appellee, Len Ran, Inc., which owns the paved portion of the roadway and fifteen feet on either side of the paved drive as well as a parcel of real estate at the west end of the drive upon which the appellee operates a machine shop.

In 1984, the appellants cleared the lot in preparation of constructing a house. In constructing the house, the appellants installed six downspouts and a sump pump which drained into two drain lines which, in turn, carried the water to appellee's property, the strip of land between appellants' parcel and Karry Drive.

On May 30, 1986, the appellee filed a complaint for a declaratory judgment asking the court to declare that the appellants have a right of ingress and egress only on the driveway area but have no right to trespass on the unpaved portion adjacent to Karry Drive for any purpose, including landscaping or excavation for drainage purposes.

On June 23, 1986, the appellants filed an answer and counterclaim. In June of 1987, the appellee poured concrete on its unpaved portion of land which the appellants were using as a drainage ditch. The concrete blocked the appellants' drain lines and caused water to back up. Consequently, on August 6, 1987, the appellants filed an amended counterclaim seeking injunctive relief.

The appellee dismissed as moot its complaint for declaratory judgment, and on December 29, 1987, the case was tried to the court only on appellants' counterclaim.

At trial, the main dispute was the natural drainage patterns of appellants' parcel of land. Appellant, Alan Mellott, who is a registered civil engineer, testified that the parcel sloped and naturally drained towards Karry Drive. Mellott based his opinion on the United States Geological Survey Map, a topographical map prepared by the U.S. Department of Interior. Mellott further testified that he did not change the existing grades of the property during construction of the house, although Mellott did admit to having about five truckloads of dirt deposited on the westerly portion of his property.

The appellee presented four witnesses who contradicted Mellott's testimony. Randil Brawley, President of Len Ran, Inc., testified that appellants' parcel is lower than the road, stating that, prior to the construction of appellants' house, a pond of water accumulated in the middle of the lot, two-thirds of the way back from Karry Drive.

Appellants' neighbor, David Common, who owns a parcel between the appellants and the apeellee, testified that there was no standing water problem in front of his house prior to the appellants' construction. However, Common testified that, since the construction, water from appellants' property backed up in his front yard.

Howard Boles, who cleared appellants' lot, testified that the natural flow of the water was south of the lot. Richard Stockman, a professional engineer, testified that the surface water flowed to the south of appellants' parcel, away from Karry Drive. Stockman based his opinion on a visual inspection, not on a survey or a topographical study.

In addition, the appellants introduced into evidence a 1966 memorandum of agreement executed by the predecessors in interest of both the appellants and the appellee. This memorandum of agreement grants a permanent easement for ingress and egress only. Appellants also introduced exhibits relating to properly outside of appellants' chain of title. These

instruments, which apply to property *across the street* from the appellants' parcel provide for utility and drainage use.

Based on the foregoing testimony, photographs and other exhibits admitted into evidence, the trial court found that appellants changed the surface drainage of their parcel to Karry Drive by landscaping and grading the parcel. The court further found that there was no evidence that appellants were granted a drainage easement. They were only granted an easement of ingress and egress.

Citing *McGlashan* v. *Spade Rockledge Corp.* (1980), 62 Ohio St. 2d 55, the trial court found that appellants had no right to direct water from artificial drains onto appellee's property. The trial court did indicate that appellants had certain rights concerning the runoff of surface water; however, the court did not expand on these rights.

On March 23, 1988, the trial court denied appellants' request for injunctive relief and dismissed their counterclaim. The appellants filed a motion for a new trial on April 5, 1988 which was subsequently denied on May 8, 1989.

Appellants now timely appeal from the trial court's judgments and assign the following as error:

"I. The trial court erred to the prejudice of defendants-appellants in denying injunctive relief and dismissing defendants-appellants counterclaim for injunctive relief.

"II. The trial court erred to the prejudice of defendants-appellants in overruling their motion for a new trial."

In the first assignment of error, the appellants contend that the trial court erred in denying and dismissing their counterclaim for injunctive relief. Appellants present two arguments.

Appellants' first argument is that they presented the only objective and reliable evidence which proved that the natural drainage of their parcel drained towards Karry Drive and that they did not alter the natural grades of the property.

The evidence in the record and the court's findings do not support appellants' argument. The trial court found that appellants installed downspouts, a sump pump and drain lines which drained onto appellee's property. The court further found that the appellants graded and landscaped their parcel, changing the surface drainage towards Karry Drive.

It has long been recognized that the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230. Moreover, this appellate court will not reverse a trial court's judgment as being against the weight of the evidence which is supported by some competent, credible evidence.

The law in Ohio on surface water disputes is embodied in *McGlashan* v. *Spade Rockledge Corp., supra,* on which the trial court relied in its judgment. In *McGlashan,* the Ohio Supreme Court overruled the common law rule and adopted the "reasonable use" rule:[1]

"In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. (*Butler* v. *Peck*, 16 Ohio St. 334, and its progeny, overruled to extent inconsistent herein.)"

In the case *sub judice*, the appellants did not only alter the flow of surface water but installed artificial drain lines to collect and drain both surface water and subsurface water extracted by a sump pump onto appellee's land. The trial court stated that the *McGlashan* decision "*** grants no right to direct water from man-made drains onto the lands of Len Ran." It may be implied that the trial court found the appellants' alteration of the water flow an unreasonable use.

In *Blashinsky* v. *Topazio, et al.* (April 17, 1987), Lake App. No. 11-113, unreported, where a storm sewer drain was installed on a neighbor's property, without an easement, to carry surface water runoff, this appellate court stated that, while the *McGlashan* decision "*** gives certain rights to the Blashinskys concerning the runoff of *surface* waters from their property, it gives them no common law rights under which they may direct a man-made storm sewer drain onto the defendant's property." *Id.* at 11-12.

Although the installation of downspouts, sump pumps and drain lines are not unreasonable in and of themselves, however,

based on the facts of this case, appellants had no right to divert water through man-made drain lines onto Karry Drive, which is owned by appellee.

Therefore, we agree with the trial court's determination that appellants' installation of the drain lines in question was an unreasonable use of their land.

In other words, *McGlashan* and *Blashinsky*, *supra*, are not discordant in this regard with the earlier pronouncement in *Bey* v. *Wright Place, Inc.* (1956), 108 Ohio App. 10:

"Where a water course, well defined channel, or natural depression, exists on the land of the upper proprietor, he may collect the surface water on his land into sewers or drains and discharge it into such water course, natural channel or depression on his own land, without liability to the lower owner. ***" Paragraph one of syllabus.

Here, the trial court determined from the evidence before it that the appellant had altered the course of the natural surface drainage, which ran afoul of the rationale in *Bey,* and under such facts could well be found to be unreasonable under the logic of *McGlashan* and *Blashinsky.*

Next, appellants argue that they are entitled to drain their land onto Karry Drive based on easements granted by the original owners which are *outside* of appellants' chain of title.

The record shows that the only easement appellants were granted was that of ingress and egress. The property owners on the north side of Karry Drive, across the street from the appellants, were granted easements for necessary utility and drainage lines. The instruments granting these easements state that these are permanent easements intended for the benefit of grantees and other property owners on land contiguous to Karry Drive.

Although the appellants admit that these easements do not directly apply to their property, nevertheless, they claim that they are third-party beneficiaries of the contract operating as a grant of easement because their property is "contiguous" to Karry Drive and they are, thus, obvious beneficiaries of the easement.

The appellee argues that the appellants are strangers to the instrument, since it is not in their chain of title, and that an implied easement will not arise. Appellee contends that implying an easement which is outside the appellants' chain of title would "stand the concept of marketable title on its head" and would take away from appellee's fee simple title.

Appellants' argument is interesting but not well taken. Even if we were to accept appellants' third-party beneficiary theory, which we should not, appellants have failed to prove that the easements dor drainage granted to property owners *across the street,* which are outside their chain of title, were intended for their benefit.

Appellants' first assignment of error is without merit.

In the second assignment of error, the appellant argue that the trial court erred in overruling their motion for a new trial.

Appellants contend that they are entitled to a new trial pursuant to Civ. R. 56(A) because the judgment of the trial court is contrary to law and against the weight of the evidence.

The denial of a motion for a new trial is within the sound discretion of the trial judge. In the absence of a clear showing of abuse, the trial court's decision will not be disturbed. See Civ. R. 59. In the discussion of the first assignment of error, it is apparent that the trial court applied the correct law; and its judgment is supported by competent, credible evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1979), 54 Ohio St. 2d 279.

Appellants have failed to show an abuse of discretion; therefore, the second assignment of error is without merit.

For the reasons stated herein, appellants' assignments of error are without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J.,
FORD, J., Concur.

---

[1] The common law rule was that "where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies lower than the other, the lower one owes a *servitude* to the upper, to receive the water which *naturally* runs from it, provided the industry of man has not been used *to create the servitude.*" v. *Peck* (1865), 16 Ohio St. 334, (emphasis in the original).